UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                    │
│ DATE FILED: 09/19/2016                    │
└─────────────────────────────────────────┘
```

SHELTON HOLT,

                      Plaintiff,

          -against-

DYNASERV INDUSTRIES, INC., et al.,

                   Defendants.

14 Civ. 8299 (LGS)

AMENDED OPINION & ORDER

LORNA G. SCHOFIELD, United States District Judge:

      Plaintiff Shelton Holt brings this action against Defendants DynaServ Industries, Inc. ("DynaServ") and Jorge Castillo.  Plaintiff alleges that Defendant DynaServ unlawfully discriminated against him, harassed him, retaliated against him and subjected him to a hostile work environment in violation of federal, state and local antidiscrimination law -- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981; New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code § 8-197 et seq. ("NYCHRL").  Plaintiff makes the same claims under state and local law against Defendant Jorge Castillo.  Defendants move for summary judgment on Plaintiff's claims.  For the reasons below, Defendants' motion is granted in part and denied in part.  The discrimination and retaliation claims are dismissed, and certain hostile work environment claims against both Defendants survive.

## I.    BACKGROUND

      The following facts are taken from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and the parties' submissions on this motion, including their supplemental joint submission dated August 16, 2016.  For the purposes of this summary judgment motion, all factual disputes are resolved, and all reasonable inferences are drawn, in Plaintiff's favor.  *See*

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *Wright v. N.Y. State Dep't of Corr.*, No. 15-3168, 2016 WL 4056036, at *4 (2d Cir. July 29, 2016).

### A.  **The Parties**

Plaintiff is an African-American man formerly employed by Defendant DynaServ from approximately November 2013 to April 2015.  Defendant DynaServ cleans and maintains street furniture in New York City.  Plaintiff worked on the evening shift as a cleaner with the title "field technician."  He was supervised by Defendant Jorge Castillo and Javier Cortez, a former defendant against whom all claims were voluntarily dismissed.  Both Castillo and Cortez were first line supervisors for evening shift field technicians.  As first line supervisors, Castillo and Cortez did not have the power to hire, fire, promote or demote cleaning and maintenance employees such as Plaintiff, nor did they have the power to significantly change Plaintiff's employment benefits.

### B.  **DynaServ**

Cleaning and maintenance employees at DynaServ work either a morning or evening shift.  These employees are supervised by first line supervisors like Castillo and Cortez.  The first line supervisors report to a shift manager.  When Cortez and Castillo were first line supervisors on the evening shift, they reported to Curtis Callender, the night shift manager, who is African-American.

DynaServ has established anti-discrimination policies and complaint procedures that its employees can use if they believe they have been subjected to discrimination or harassment.  These procedures are published in an employee handbook.  Plaintiff received and read the May 2014 edition of the handbook in June 2014.  DynaServ conducted mandatory anti-harassment training for supervisors on April 3, 2014.

C.  **Local Union No. 3 and the Collective Bargaining Agreement**

Employees in cleaning and maintenance positions at DynaServ are covered by a collective bargaining agreement between DynaServ and Local Union No. 3, International Brotherhood of Electrical Workers.  In addition to DynaServ's anti-discrimination complaint procedures, employees covered by the collective bargaining agreement can contact the union directly or through their on-site shop steward to complain about discrimination or harassment. The union assigned Anthony Esponda as its local union representative to administer grievances and engage in collective bargaining with DynaServ.

D.  **Discriminatory Conduct and Plaintiff's Complaints**

Holt testified that his supervisors Cortez and Castillo called him "nigger" more than once. Plaintiff claims that that in or about February 2014, Cortez called Plaintiff a "nigger" who "should be fired."  Castillo and another employee were present.  Plaintiff reported this incident to Callender, who met with Cortez and Castillo the following day.  Callender told Plaintiff that Callender would inform Greg Montesano, the president of DynaServ, if Cortez's conduct did not stop.  Plaintiff described an exchange he had some time later with Cortez about Cortez taking something that did not belong to him.  As Plaintiff questioned him, Cortez replied "Yo, this nigger don't listen."  Plaintiff again reported the incident to Callender, who told Cortez to leave Plaintiff alone.  Plaintiff also asserts that, while Cortez was a supervisor, Cortez removed the resume of a black applicant from the desk of another supervisor, "tearing it up so that a black employee would not get the position."

Plaintiff described an incident, observed by everyone on the night crew, that occurred when Castillo was distributing soap for cleaning.  When Plaintiff asked a question, Castillo said to Cortez, "You know, this nigger just don't understand."  After Plaintiff and Castillo exchanged words, Plaintiff went out on his route.  That evening, Plaintiff repeatedly tried to call Castillo to

report that his route was completed and he was returning, but Castillo would not pick up. Castillo later accused Plaintiff of not calling in as required.  Callender examined Plaintiff's phone and saw that he had tried to call.  Plaintiff said that he believed that Castillo "wrote me up" for the soap incident.

On or about August 13, 2014, Plaintiff provided a handwritten letter to Montesano alleging that Cortez and Defendant Castillo harassed and discriminated against African-American applicants and employees.  The letter describes the resume incident by Cortez, and says that Cortez damaged a company vehicle and then tried to blame a black employee.  The letter does not mention the use of racial epithets.  Montesano contacted Callender to arrange a meeting with Plaintiff regarding the letter.  Plaintiff met with Montesano, Callender and Carol Carpenter, a human resources employee, on or around September 5, 2014.  At this meeting, Plaintiff asserts that he told Montesano that Cortez and Castillo were racially prejudiced against him, and that "if you call someone a nigger once, you will do it twice, and you will keep on doing it and doing it and doing it."  According to Montesano, Plaintiff did not say that either Cortez or Castillo had called him "nigger."

Plaintiff also complained via Local Union No. 3.  Plaintiff sent an e-mail to Esponda, the union representative, on August 29, 2014, asking what recourse was available when an individual has a problem with a supervisor whose motives are "racist and beyond the scope of the job."  Esponda called Plaintiff the next day to discuss the e-mail.  In his deposition, Esponda did not recall Plaintiff telling him that Cortez or Castillo referred to him using the N word. Esponda also testified that other night workers were making similar complaints about Castillo and Cortez.

Montesano and Esponda conducted a joint investigation of Plaintiff's allegations against Cortez and Castillo.  Esponda spoke with Cortez and asked about "some complaints by some of

the African-Americans and they have to do with racial." Cortez responded that "when we check on their work and we tell them to fix it, they say, oh, you're picking on me, it's racial." It is unclear whether anyone spoke with Castillo about the allegations. Neither the union nor DynaServ was able to determine that Cortez or Castillo had acted discriminatorily toward Plaintiff, apparently because Cortez and Castillo denied the accusations.

As a result of Plaintiff's written complaint, on September 30, 2014, DynaServ issued identical final warning notices to Cortez and Castillo to let them know that whether the reported incidents had occurred or not, discriminatory behavior would not be tolerated. The warning references "incidents prior to and including 09/02/2014 written notification." The warning describes the type of offense as Harassment, Violation of Company Policies/Procedures, and Discrimination. The infraction is described as "Reported demoralizing and discriminatory behavior/treatment creating a hostile work environment for the employees under your supervision. EEOC/TITLE VII prohibits actions that discriminate, by motivation or impact, against persons because of race." The consequence of further infractions is "[i]mmediate termination."

Plaintiff also said that after he complained to Callender about Cortez and Castillo, he heard that they complained directly to Callender's supervisor and to Montesano about Plaintiff, including negative comments about Plaintiff's work performance. Plaintiff testified that Cortez and Castillo campaigned for his dismissal.

According to Montesano, Plaintiff did not complain to him again about Cortez or Castillo. According to Esponda, Plaintiff did not complain to him about discriminatory behavior by supervisors after Esponda told Plaintiff that he had met with DynaServ about Plaintiff's complaint. Plaintiff stated that the harassment continued throughout his employment at DynaServ, but the record does not identify any further incidents.

5

For reasons that did not involve Plaintiff, Cortez was fired on November 17, 2014, for "insubordination," because he had failed to follow his manager's directions with regard to the cleaning of certain newsstands.  On or about May 4, 2015, Castillo was demoted from shift supervisor to repair technician, because his job performance was not meeting the expectations of his position.

Plaintiff asked the union representative to file a grievance against human resources manager Kathy D'Oro concerning a hostile environment.  The letter was filed December 5, 2014. Plaintiff said that the basis for the complaint was that D'Oro was "standoffish" towards him and unresponsive to his complaints.

**E.  Plaintiff's Leave of Absence and Termination**

Plaintiff informed Callender in a handwritten note that Plaintiff would take a leave of absence from DynaServ beginning on February 23, 2015.  Plaintiff alleged in the Amended Complaint that this leave was for medical reasons.  In his statement of disputed material facts, Plaintiff denies that he took a leave of absence for medical reasons and asserts that "Defendants forced Plaintiff from his employment due to the racial discrimination and retaliation conducted by Defendants."

Plaintiff provided information regarding the medical procedure that necessitated his leave of absence to his union, which conveyed the information to DynaServ.  Esponda told Plaintiff that DynaServ would send him paperwork pursuant to the Family and Medical Leave Act ("FMLA") regarding his medical leave, which Plaintiff said he would complete.  Plaintiff did not return the completed FMLA paperwork to DynaServ, despite repeated communications from both Esponda and DynaServ, including a letter from DynaServ dated April 20, 2015, informing Plaintiff that, if he did not contact DynaServ by April 30, 2015, his lack of response would be deemed a voluntary resignation.  Communications from DynaServ to Plaintiff dated April 14,

2015, and April 20, 2015, informed Plaintiff that DynaServ had been notified that Plaintiff may have secured employment elsewhere.  DynaServ terminated Plaintiff's employment.  Esponda informed Plaintiff that DynaServ had terminated Plaintiff's employment.

Plaintiff secured employment and began training with the Metropolitan Transit Authority ("MTA") on February 23, 2015, the same day that Plaintiff informed DynaServ of his leave of absence. That same day, Plaintiff completed an MTA form indicating that he was unemployed. Plaintiff continues to be employed by the MTA, where he earns almost twice what he earned at DynaServ.

### F.  **Plaintiff's EEOC Complaint**

On September 26, 2014, Plaintiff filed a charge of discrimination based on age and race with the Equal Employment Opportunity Commission ("EEOC").  In a fax to the EEOC, Plaintiff detailed the issues upon which his EEOC charge was based.  The EEOC issued a right to sue letter dated September 30, 2014, dismissing his charge and stating "that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the [EEOC]."

Plaintiff commenced this action October 15, 2014, against Dynaserv, Cortez and Castillo. As reflected in an Order dated November 12, 2015, Plaintiff voluntarily dismissed his claims against Cortez, as well as his age discrimination claims.

### II.  **STANDARD**

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58-59 (2d Cir. 2016).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Young*, 135 S. Ct. at 1347; *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S at 248; *accord Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014).

## III.   DISCUSSION

Plaintiff alleges that Defendants discriminated against him, retaliated against him and created a hostile work environment.  All claims under federal law are alleged solely against Defendant DynaServ, while all claims under the NYSHRL and the NYCHRL are alleged against both Defendants, DynaServ and Castillo.  For the following reasons, summary judgment for Defendants is granted on Plaintiff's claims for discrimination and retaliation and denied on Plaintiff's claims for hostile work environment.

### A.   The Discrimination and Retaliation Claims Under Federal and State Law

At summary judgment, Plaintiff's claims alleging discrimination and retaliation under Title VII, 42 U.S.C. § 1981 and NYSHRL are subject to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) (applying *McDonnell Douglas*

burden-shifting analysis to Title VII employment discrimination claim); *Walsh v. N.Y.C. Hous. Auth.*, No. 14-181, 2016 WL 3632245 (2d Cir. July 7, 2016) (applying *McDonnell Douglas* burden shifting analysis to NYSHRL employment discrimination claim).  Under this framework, a plaintiff must establish a prima facie case of discrimination or retaliation; if a prima facie case is established, a defendant must proffer a legitimate and non-discriminatory reason for its actions; finally, if the defendant offers such a reason, a plaintiff must show that the defendant's reason is pretext for unlawful discrimination or retaliation.  *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

### i. <u>Discrimination</u>

To establish a prima facie case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Id.* at 251-52 (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).  "The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the *prima facie* stage has been characterized as 'minimal' and '*de minimis*.'"  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (quoting *Woodman v. WWOR-TV*, 411 F.3d 69, 76 (2d Cir. 2005)); *accord Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  The record does not support an inference of discriminatory intent even under that minimal burden, and summary judgment on Plaintiff's discrimination claims under Title VII and the NYSHRL is granted.

Turning to the first and second prongs of Plaintiff's prima facie case of discrimination, Plaintiff is a member of a protected class and it is not disputed that he was qualified for his position.

Plaintiff also satisfies the third prong of the test for establishing a prima facie case of discrimination, that he suffered an adverse employment action. Termination constitutes an adverse employment action for purposes of Title VII. *See Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include termination of employment . . . ."). Although the parties dispute whether Plaintiff's departure from DynaServ is properly characterized as a voluntarily resignation, constructive termination or actual termination, a reasonable jury could conclude that Plaintiff was terminated. Plaintiff does not claim that he suffered any other adverse employment action.

Plaintiff cannot establish the fourth prong of a prima facie case, discriminatory intent. The record shows discriminatory animus only on the part of Cortez and Castillo. They did not have the power to fire Plaintiff. Although Plaintiff asserts that they "campaigned" for his dismissal, he provides no additional facts or evidence to support the statement. Even assuming they did, the chronology makes plain that they were unsuccessful in their efforts. Cortez was fired while Plaintiff continued to be employed at DynaServ. Plaintiff continued that employment until he elected to take his purported medical leave, only to begin work on the same day with another employer in a higher-paying position. Still Plaintiff continued in the employ of DynaServ, on leave, until he failed to submit papers supporting his leave. Plaintiff admits in his Rule 56.1 counter-statement that his employment was terminated because he failed to complete and return paperwork for his FMLA medical leave. That admission alone is dispositive. *See Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 158 (2d Cir. 2014) ("[W]here Brown's deposition testimony appears to conflict with his Rule 56.1 statement of undisputed facts, . . . we rely on the facts in his Rule 56.1 statement.") (citation omitted); *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (holding that parties are bound by admissions to courts). Based on all of these facts, no reasonable jury could find that DynaServ terminated Plaintiff from

his employment on account of discriminatory intent, and Plaintiff has failed to make a prima facie case for discrimination under Title VII or the NYSHRL.

Even if Plaintiff could establish a prima facie case, Defendant DynaServ offers a credible non-discriminatory reason for terminating Plaintiff's employment -- that, as Plaintiff admits, he did not complete and return FMLA paperwork related to his medical leave despite repeated requests from both the union and DynaServ.

Plaintiff does not meet his burden of showing that the reason for his termination was pretextual. He does not argue that it was pretextual and provides no evidence to suggest it was pretextual. Plaintiff admits that DynaServ and Esponda contacted him regarding the uncompleted FMLA paperwork, and that DynaServ notified him that his employment would be terminated on April 30, 2015, if he did not complete and return the paperwork. Plaintiff further admits that he did not do so and that his employment was terminated, as warned, on April 30, 2015.

Plaintiff argues that he was constructively discharged. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (citation and internal quotation marks omitted). Plaintiffs alleging constructive discharge "face a demanding standard." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). To succeed on a constructive discharge claim, an employee must show that his employer "intentionally create[d] a work atmosphere so intolerable that [he was] forced to quit involuntarily." *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 192 (2d Cir. 2011) (quoting *Terry*, 336 F.3d at 151-52).

Plaintiff cannot meet this high bar.  Nothing suggests that Plaintiff's work environment was intolerable because of discrimination during the months between August 13, 2014, when Plaintiff submitted his complaint letter, and April 30, 2015, when Plaintiff's employment was terminated.  In September 2014, Cortez and Castillo had received final warnings regarding their conduct toward Plaintiff.  The record does not contain any evidence of further discriminatory acts against Plaintiff after Cortez and Castillo received their final warnings.  Cortez was fired two months later in November 2014.  Plaintiff continued to report to work until February 2015, and then finally was terminated on April 30, 2015, for failure to submit FMLA documents while on leave.  Most important, the record shows that Plaintiff went on his medical leave because he found a better and higher paying position elsewhere, and not because the discriminatory environment was unbearable.  Given this evidence, Plaintiff has failed to adduce evidence from which a reasonable jury could find that his work conditions were so intolerable as to compel his resignation either in February or April 2015.  A reasonable jury therefore could not find that he was constructively discharged.

Defendants' motion for summary judgment on Plaintiff's claims for discrimination in violation of Title VII and NYSHRL is granted.

### ii.   Retaliation

Plaintiff alleges retaliation in violation of Title VII and the NYSHRL, which is also subject to the *McDonnell Douglas* burden-shifting analysis.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute*, 420 F.3d at 173) ("Retaliation claims under Title VII are evaluated under a three-step burden shifting analysis.").  To establish a prima facie claim of retaliation, a plaintiff must show that: (1) he participated in protected activity; (2) the defendant knew about his participation in protected activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) there exists a causal connection between the protected activity and

the negative employment action.  A presumption of retaliation arises if the plaintiff meets this burden.  *Hicks*, 593 F.3d at 164.  The defendant or defendants can rebut this presumption by articulating a legitimate and non-retaliatory reason for the adverse employment action.  *Id.* Because Defendants' legitimate and non-retaliatory reason for terminating Plaintiff's employment rebuts the presumption of retaliation, Defendants' motion for summary judgment on Plaintiff's claims for retaliation is granted.

Plaintiff satisfies the first three elements of a prima facie case of retaliation.  First, Plaintiff engaged in protected activity when he complained to Callender, Montesano, Esponda and DynaServ human resources about racial harassment and discrimination through September 2014, and when he filed an EEOC complaint on September 26, 2016.  *See Kirkland v. Cablevision Systems*, 760 F.3d 223, 225 (2d Cir. 2014) ("To state a prima facie case of retaliation under Title VII, a plaintiff must proffer evidence that he engaged in a protected activity, such as complaining about race discrimination . . . .").  Second, DynaServ was aware of this protected activity.  Third, while Cortez and Castillo's ineffective campaign to have Plaintiff fired is not adverse employment action, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006); *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010), DynaServ terminated Plaintiff, which is an adverse employment action, as discussed above.

Plaintiff's claim falters on the fourth element -- a causal connection between the protected activity and the negative employment action.  Under the Supreme Court's decision in *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), a plaintiff "must now adduce facts sufficient to allow a reasonable trier of fact to find that retaliation was the 'but for' cause of her termination."  *Zann Kwan*, 737 F.3d at 849-50 (citing *Nassar*, 133 S. Ct. at 2533) (Parker, J., concurring).  "'But-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have

occurred in the absence of the retaliatory motive." *Id.* at 846.  Nothing in the record supports the inference that Plaintiff's protected activity was even a factor in his termination, much less a "but for" cause.  As discussed above, the record is clear that DynaServ terminated Plaintiff in April 2015 because he failed to complete and return the FMLA paperwork regarding his medical leave, and that Plaintiff left active employment at DynaServ for a better job.

Plaintiff has failed to make a prima facie case of retaliation under Title VII and NYSHRL, and summary judgment on these claims is granted.

**B.  The Claims for Hostile Work Environment Under Federal and State Law**

Plaintiff alleges that Defendants created a hostile work environment based on his race. Because Plaintiff has adduced sufficient evidence from which a reasonable jury could find a hostile work environment, Defendants' motion for summary judgment is denied.

**i.  Severe or Pervasive**

Claims for hostile work environment brought under Title VII and under the NYSHRL are "governed by the same standard."  *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted).  42 U.S.C. § 1981 "has been interpreted to provide a cause of action for race-based employment discrimination based on hostile work environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (internal quotation marks omitted).  "To establish a hostile work environment under Title VII, § 1981 or § 1983, a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Ordinarily a race-based hostile work environment claim must involve "more than a few isolated incidents of racial enmity," *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir.1999) (internal quotation marks omitted).  The plaintiff must identify sufficient material facts

to show that the alleged conduct was more than "episodic," and must show that the conduct was "sufficiently continuous and concerted in order to be deemed pervasive." *Tolbert*, 790 F.3d at 439 (citation omitted). Yet, "a hostile work environment can also be established through evidence of a single incident of harassment that is extraordinarily severe," *Fincher v. Depository Tr. & Clearing Corp.,* 604 F.3d 712, 724 (2d Cir. 2010) (internal quotation marks omitted). "[P]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguous racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012) (citation omitted).

Discriminatory conduct need not be directed at Plaintiff -- derogatory comments and actions directed at others may contribute to a hostile work environment experienced by an employee. *See Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 71 (2d Cir.2000) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) ("'[T]he mere fact that the plaintiff was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim' because 'the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment.'").

To establish a prima facie case of hostile work environment, a plaintiff must satisfy both objective and subjective components. Objectively, the alleged conduct must be "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (citation omitted).

Objectively, a reasonable jury could conclude that the acts of Cortez and Castillo,

particularly the repeated use of racial epithets directed at Plaintiff as well as their actions towards others -- like the destruction of the black applicant's resume -- were sufficiently severe and pervasive to create an objectively hostile work environment for Plaintiff on the basis of his race. *See Rivera,* 743 F.3d at 24 (holding that use of racial slur by supervisor created question of fact as to hostile work environment and vacating grant of summary judgment); *Feingold v. New York*, 366 F.3d 138, 144-45, 158 (2d Cir. 2004) (finding question of fact as to hostile work environment where coworkers categorized people by religion and referred to plaintiff by last names traditionally associated with his religion in derogatory tone).  Subjectively, there is no dispute that Plaintiff perceived this work environment to be abusive.

### ii.  **Employer Liability - Federal Law**

Because a reasonable jury could conclude that DynaServ was negligent in controlling working conditions by failing to respond to Plaintiff's complaints, summary judgment on the federal hostile work environment claim is denied.

An employer's liability for a hostile work environment is measured differently depending on whether the perpetrator of the harassment is a supervisor or a co-worker.  A negligence standard applies if the harasser is a co-worker.  "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).  Plaintiff must therefore demonstrate that "the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Murray v. N.Y. Univ. Coll. of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995) (internal quotation marks omitted).  Strict liability applies if the harasser is a supervisor.  "An employer is strictly liable for harassment perpetrated by a supervisor, unless the employer is able to establish an affirmative defense showing that it 'exercised reasonable care to prevent and correct [ ] any . . . harassing behavior' and that the plaintiff 'unreasonably failed to take

advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.'" *Wiercinski v. Mangia 57, Inc.,* 787 F.3d 106, 113 (2d Cir. 2015) (alteration in original) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998)).

For the purpose of vicarious liability under Title VII, a supervisor is a person empowered by the employer "to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'" and not someone who merely can significantly direct another's daily work. *Vance*, 133 S. Ct. at 2443 (quoting *Burlington Indus*., *Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  In the present case, Cortez and Castillo were not supervisors for purposes of strict liability under Title VII.  Although they were supervisors in the colloquial sense, they did not have the power to effect the requisite significant changes in Plaintiff's employment status, such as hiring and firing. Indeed, Cortez and Castillo allegedly tried to have Plaintiff fired but were unsuccessful.

A reasonable jury could conclude that Defendant DynaServ was negligent in controlling working conditions and is vicariously liable for the discriminatory actions of Cortez and Castillo because, drawing all inferences in favor of Plaintiff, a jury could find, *first*, that DynaServ should have discovered and therefore stopped the offending conduct earlier, when Plaintiff first began complaining to Callender about the offensive conduct; and *second,* that the investigation of Plaintiff's written complaint was inadequate resulting in insufficient disciplinary measures.  An employer may be negligent where it "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed. . . ." *Vance*, 133 S. Ct. at 2453.  Plaintiff reported the use of racial epithets to Callender, his supervisors' supervisor, each time one of these incidents occurred. Each time Callender tried to address the situation, but apparently did not elevate it to anyone

who could take disciplinary action against Cortez and Castillo.  Consequently, the behavior continued until Plaintiff himself wrote a formal complaint of discrimination and submitted it to DynaServ's president.

Although DynaServ conducted a "joint investigation" with the union representative, the evidence suggests that the investigation amounted to nothing more than the company's interview of Plaintiff, and the union's telephone conversation with Cortez about "some complaints" that "have to do with racial."  Based on the record submitted on this motion, there apparently was no investigation of Plaintiff's specific allegations, nor any interview of Castillo, or Callender or any of the witnesses who observed the harassing conduct.  Although both Cortez and Castillo were disciplined as a result of the investigation, the severity of that discipline appears to have been based on an investigation that was inconclusive because it was not thorough.

Whether DynaServ should have done more to assure responsive action to informal oral complaints, or should have undertaken a more thorough process in response to Plaintiff's formal written complaint, and was therefore negligent in controlling working conditions, are questions of fact for the jury and cannot be resolved on summary judgment.  Accordingly, the hostile work environment claim under federal law against DynaServ survives.

### iii.    Employer Liability - State Law

Because Plaintiff fails to adduce any evidence that DynaServ encouraged, condoned or approved Cortez's or Castillo's harassing conduct, summary judgment is granted on Plaintiff's claim against DynaServ for hostile work environment under NYSHRL.

Under New York law, unlike under federal law, "an employer is never strictly liable for the conduct of employees, [whether or not] the harassing employee is a Plaintiff's supervisor." *Marchuk v. Faruqi & Faruqi,* 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (citation omitted).  "An employer is only liable for conduct that it encouraged, condoned, or expressly or impliedly

approved." *Id.* (citation omitted).  The New York Court of Appeals has held that "[c]ondonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense," and "[a]n employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.,* 487 N.E.2d 268, 269 (N.Y. 1985).

There is no evidence that DynaServ condoned, encouraged or approved the harassing conduct alleged by Plaintiff.  Although there are factual questions as to the sufficiency of DynaServ's response to Plaintiff's complaints, no reasonable jury could conclude that DynaServ approved or encouraged the behavior in question.  Summary judgment on Plaintiff's NYSHRL hostile work environment claim is granted.

iv.  **Employee Liability - State Law**

Summary judgment is granted to Defendant Castillo on Plaintiff's NYSHRL claim for hostile work environment against him.  The NYSHRL allows for individual liability under two theories: first if the defendant has an "ownership interest" in the employer or has the authority to "hire or fire" employees, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc.*, 524 U.S. 742, or by aiding or abetting conduct giving rise to a claim of discrimination.  N.Y. Exec. Law § 296(6).  As Castillo has neither an ownership interest in DynaServ nor the authority to hire and fire employees, this analysis turns on whether a reasonable jury could conclude that he aided and abetted the conduct giving rise to the claim of discrimination.

Section 296(6) creates aiding and abetting liability, which makes it unlawful "for any person engaged in any activity to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article . . . ."  Section 296(1)(a) in turn makes it unlawful "[f]or an employer

. . . , because of an individual's . . . race . . . to discriminate against such individual . . . in terms, conditions or privileges of employment."

Because, as discussed above, the employer has no liability, the employee cannot be liable for aiding and abetting. *Murphy v. ERA United Realty,* 674 N.Y.S.2d 415, 418 (2d Dep't 1998) ("It is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting."); *see also Fontecchio v. ABC Corp.,* No. 12 Civ. 6998, 2015 WL 327838, at *10 n.16 (S.D.N.Y. Jan. 23, 2015) ("there can be no individual liability where the employer is found not liable"); *Pellegrini v. Sovereign Hotels, Inc.,* 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (same). Summary judgment is accordingly granted to Defendant Castillo on Plaintiff's NYSHRL claim for hostile work environment against him.

## C. <u>Discrimination, Retaliation and Hostile Work Environment Claims Under the NYCHRL</u>

Plaintiff alleges discrimination on the basis of race, employer liability for an employee's discriminatory conduct, retaliation and hostile work environment claims under the NYCHRL. Defendants' motion for summary judgment is granted as to Plaintiff's discrimination and retaliation claims and denied as to Plaintiff's employer liability and hostile work environment claims.

"[F]or many years, the NYCHRL was construed to be coextensive with its federal and state counterparts." *Velazco v. Columbus Citizens Found.,* 778 F.3d 409, 410 (2d Cir. 2015) (citation and internal quotation omitted). The NYCHRL was amended in 2005 to clarify that federal and state statutes "can serve only as a floor" for NYCHRL claims, and the NYCHRL "should 'be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Ya-Chen Chen v. City Univ. of N.Y.,* 805 F.3d 59, 75 (2d Cir. 2015) (citation omitted). In light of the 2005 revisions, "courts must analyze NYCHRL claims separately and

independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* at 75 (citation and internal quotation omitted). Under the NYCHRL, "summary judgment is appropriate if the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Id.* at 76 (citation and internal quotation omitted).

The NYCHRL prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because [she] has ... opposed any practice forbidden" as discriminatory under the NYCHRL. N.Y.C. Admin. Code § 8-107(7). "The retaliation or discrimination . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment . . . [but] must be reasonably likely to deter a person from engaging in protected activity." *Id.* A motion for summary judgment on an NYCHRL retaliation claim, like its state and federal counterparts, is analyzed under a burden shifting framework. The plaintiff must first establish a prima facie case, which the defendant may rebut by showing "legitimate reasons for its actions." *Ya-Chen Chen*, 805 F.3d at 75-76 (citing *Bennett v. Health Mgmt. Sys.*, 936 N.Y.S.2d 112, 124 (1st Dep't 2011)). The plaintiff may then defeat the motion by showing that a reasonable jury could conclude "either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* at 76 (citation and internal quotation omitted).

In the instant action, as discussed above, the record establishes that neither discrimination nor retaliation played a role in the termination of Plaintiff's employment. Instead, the termination of Plaintiff's employment was the clear consequence of Plaintiff's finding a better job and failing to complete and return FMLA paperwork related to a supposed leave of absence

21

from DynaServ.  Summary judgment is granted on Plaintiff's discrimination and retaliation claims under the NYCHRL.

As to the hostile work environment claim, instead of imposing the federal law standard of "severe or pervasive" discriminatory conduct, the NYCHRL requires that the plaintiff show only "'that [he] has been treated less well than other employees because of [his race].'".  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38-39 (1st Dep't 2009)).  Because the conduct at issue here meets the more rigorous federal standard, it necessarily meets the NYCHRL standard.

The NYCHRL creates direct liability for individual defendants by making it unlawful "[f]or an employer or an employee or agent thereof, because of . . . race . . . to discriminate against such person in . . . terms, conditions or privileges of employment."  NYCHRL § 8-107(a).[1]  *See also Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 529 (S.D.N.Y. 2015) (citation omitted) ("Unlike Title VII, which does not extend to individual employees, or the NYSHRL, which covers only limited classes of employees, the NYCHRL expressly creates direct liability for employment discrimination against 'an employee or agent' of the employer in question.") (citation omitted).  Accordingly, the claim against Castillo survives.

The NYCHRL "imposes liability on the employer [for its employee's conduct] in three instances: (1) where the offending employee 'exercised managerial or supervisory responsibility' . . .; (2) where the employer knew of the offending employee's unlawful discriminatory conduct

---

[1] In addition to direct liability, an employee can be liable based on a theory of aiding and abetting as alleged in the Seventh Cause of Action:  "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."  N.Y.C. Admin. Code § 8-107(6).  A "co-worker who 'actually participates in the conduct giving rise to a discrimination claim' can be held liable" under the NYSHRL and the NYCHRL.  *Feingold*, 366 F.3d at 158 (quoting *Tomka*, 66 F.3d at 1317) (applying same standards of analysis used to evaluate aiding and abetting claims under both the NYSHRL and the NYCHRL).

and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'"  *Zakrzewska v. New Sch.,* 928 N.E.2d 1035, 1039 (N.Y. 2010) (quoting N.Y.C. Admin. Code § 8-107(13)(b)(1)-(3)).  Thus, under the NYCHRL, a plaintiff's direct employer is not strictly liable for the conduct of its non-supervisory employees.

As discussed above, a reasonable jury could find that the facts satisfy the second or third of these three conditions.  Plaintiff repeatedly complained to Callender, who supervised Plaintiff's supervisors Cortez and Costello, about their discriminatory conduct.  Although Callender attempted to deal with each incident, he did not do so effectively in a way that prevented further offensive behavior.  The conduct did not cease until Plaintiff himself elevated his complaints to the company's president.  Either Callender was an agent of the employer, such that the employer knew of the offensive conduct and failed to take immediate and appropriate corrective action, thus satisfying condition two of the NYCHRL; or Callender was not an agent of the employer, but the employer should have known of the discriminatory conduct and did not prevent it, thus satisfying condition three of the NYCHRL.  In either case, a reasonable jury crediting Plaintiff's version of the facts could find liability on the part of DynaServ under the NYCHRL.

### D. **Other Claims**

The Ninth Cause of Action alleging "interference with a protected right" under the NYCHRL (§ 8-107(19)), fails as a matter of law because "[t]hreats are required to state a claim for violation of § 8-107(19)."  *Nieblas-Love v. N.Y.C. Hous. Auth*, No. 14 Civ. 5444, 2016 WL 796845, at *12 (S.D.N.Y. Feb. 26, 2016).  No threats are alleged in this case.

Summary judgment is also granted on the Eleventh Cause of Action because it alleges that Defendants "intentionally deprived the Plaintiff a Cuban and Hispanic American of the same rights as are enjoyed by White citizens to the creation, performance [etc.] of his contractual employment relationship." The claim is subject to dismissal because Plaintiff is black and American, not Cuban and Hispanic. The claim is also subject to dismissal for the same reason Plaintiff's constructive discharge claim fails, as discussed above.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is granted with respect to all causes of action except the Second Cause of Action (the Title VII claim against DynaServ for hostile work environment), the Seventh Cause of Action (the NYCHRL claim for aiding and abetting, as asserted against Castillo), the Eighth Cause of Action (the NYCHRL claim against DynaServ for supervisory liability) and the Tenth Cause of Action (the NYCHRL claim for hostile work environment, as asserted against Castillo). Defendants' motion for oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to strike the earlier version of this Opinion and Order at Docket No. 51.

Dated: September 19, 2016
         New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

24